788 P.2d 56

Elizabeth BROWN, as Personal Representative of the Estate of Jennifer Michelle Goode, Deceased, Plaintiff/Appellee/Cross–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant/Appellant/Cross–Appellee.

No. CV–89–0162–PR.

Supreme Court of Arizona,
En Banc.

Dec. 14, 1989.

Snell & Wilmer by David A. Paige and Alexander Sierra, Tucson, for plaintiff/appellee/cross-appellant.

Chandler, Tullar, Udall & Redhair by D. Burr Udall, Tucson, for defendant/appellant/cross-appellee.

Kleinman, Carroll & Kleinman by Frank E. Lesselyong, Phoenix, for amicus curiae.

FELDMAN, Vice Chief Justice.

Elizabeth Brown (Brown), personal representative of the estate of Jennifer Michelle Goode (Jennifer), petitions us to review a court of appeals decision holding that the underinsured motorist (UIM) coverage in the policy sold to Jennifer's stepfather by State Farm Mutual Automobile Insurance Company (State Farm) did not cover her wrongful death claim. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 161 Ariz. 427, 778 P.2d 1323 (Ct.App.1989).

We accepted review to determine whether an insurer may invoke the escape or prorata provisions of its "other insurance" clause to deny coverage under first party UIM coverage, an issue of first impression. Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I. FACTS

The facts are undisputed. Jennifer was a passenger in a car driven by Christopher Culliver. The car was involved in an accident with another vehicle driven by Darryl McGlothin. Jennifer died as the result of the accident.

McGlothin's car was insured for liability by Farmers Insurance Company (Farmers) with limits of $50,000 per person. Culliver's host vehicle was insured by Universal Insurance Company (Universal). Jennifer was an insured under the Universal policy because the policy defined an insured as "anyone occupying a COVERED AUTO." Jennifer was also an insured under the policy issued to her stepfather by State Farm. Both the Universal and State Farm policies provided UIM coverage of $100,000 per person. The parties stipulated that the damages in the wrongful death claim were at least $250,000.

Farmers paid the $50,000 liability limit to Brown, as personal representative of Jennifer's estate. Because at least $200,000 remained unpaid on the claim, Brown demanded that Universal and State Farm each pay $100,000 under their respective UIM provisions. Meeting resistance from the two insurers, she sought declaratory relief in the trial court to determine her rights under the terms of the automobile insurance policies.

## II. PROCEDURAL HISTORY

### A. Trial Court

The parties all filed motions for summary judgment. Before the trial court ruled, however, Universal agreed to pay its policy limits of $100,000. State Farm contended the Universal policy provided primary coverage. Therefore, State Farm argued, it was the excess insurer and under its policy had no liability after Universal had paid the full limits available ($100,000).

The trial court held that Jennifer was an insured under both policies. The court

1. The State Farm provision regarding other insurance stated:

compared the other insurance provisions of the two policies. Citing the provision in the Universal policy that stated "[the Universal policy] is excess for any covered auto not owned by the insured ..." and determining that Jennifer had not owned the "covered auto," the court found that Universal provided excess UIM coverage. Minute Entry, dated March 25, 1988. Referring to the State Farm provision stating that its policy is excess "[i]f the **insured** [Jennifer] sustains **bodily injury** while **occupying** a vehicle not owned by **you, your spouse** or any **relative**," the court determined that State Farm also provided excess UIM coverage. *Id.* (emphasis in original). Thus, finding that both policies were excess, and therefore equal, the court held that the coverage was to be prorated, so that each insurer was liable to pay $50,000 of its $100,000 UIM limit. Therefore, the court ordered State Farm to pay Brown $50,000.

Thus, Farmers had paid $50,000, its entire liability coverage, and Universal had settled for and paid $100,000, its entire UIM coverage. If State Farm were to comply with the judgment, it would pay $50,000, one-half of its UIM coverage. The result would be that Brown would recover a total of $200,000 on damages stipulated to be at least $250,000. State Farm appealed and Brown cross-appealed.

### B. The Court of Appeals

State Farm continued to maintain that Universal's policy provided primary coverage because it was the policy covering the vehicle involved in the accident. Because its policy covered only the passenger, State Farm claimed its coverage was excess and it was entitled to apply the "escape" provision that stated its excess UIM coverage "applies ... only in the amount by which it exceeds the primary [Universal] coverage." [1] Thus, State Farm argued, because its coverage did not exceed Universal's, but was equal, it would not apply at all. In her cross-appeal, Brown argued that the limits of both policies should be aggregated.

**If There Is Other Underinsured Motor Vehicle Coverage**

Applying the statutory directives incorporated in A.R.S. § 28–1170.01(B) to determine the priority between Universal and State Farm, the court held that the Universal policy describing the vehicle was "conclusively presumed" to be primary while State Farm was excess. 161 Ariz. at 428, 778 P.2d at 1324. Because State Farm's excess coverage applied "only in the amount by which it exceed[ed] the primary coverage," and because both coverages were for $100,000, the court concluded State Farm did not provide coverage. *Id.*

The posture of this case, therefore, requires us to determine first whether State Farm provides primary or excess coverage. If it provides primary coverage, then it is liable to Brown for her uncollected damages. If it provides excess coverage, we must then determine whether State Farm may apply the escape provisions of the other insurance excess clause in its UIM policy to avoid paying any portion of the uncompensated loss.

### III. DISCUSSION

A. The State Farm Other Insurance Clause—Who is the Primary Carrier?

State Farm's other insurance clause provides that its UIM coverage is "excess to any underinsured motor vehicle coverage which applies to the vehicle or driver." The Universal policy contains an other insurance clause that provides that it is "primary but it is excess for any COVERED AUTO not owned by the INSURED. . . ." The court of appeals did not compare the two provisions or apply common law rules to determine excess and primary coverage because it believed A.R.S. § 28–1170.01(B) establishes firm rules determining priority when more than one auto policy applies to an occurrence.[2] *See Brown,* 161 Ariz. at 428, 778 P.2d at 1324; *see also State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 153, 717 P.2d 449, 457 (1986). Applying § 28–1170.01(B) to this case, the UIM coverage on the vehicle involved in the accident (Culliver's Universal policy) is primary and that on any other auto (Brown's State Farm policy) is excess. *See* A.R.S. § 28–1170.01(B).

We believe the parties' focus on the court's interpretation of this statute is misplaced.[3] The statute does no more than determine which carrier is excess and which is primary when two separate policies apply. As between two insurers, grounds might exist to attack the applica-

---

3. If the **insured** sustains **bodily injury** while **occupying** a vehicle not owned by **you, your spouse** or any **relative,** and
a. such vehicle is described on the declarations page of another policy providing underinsured motor vehicle coverage . . .

     .     .     .     .     .

this coverage applies:
a. as excess to any underinsured motor vehicle coverage which applies to the vehicle or driver, but
b. only in the amount by which it exceeds the primary coverage.
If the coverage under more than one policy applies as excess:
a. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and
b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable as excess to the accident.
Joint Statement of Facts, filed October 15, 1987 (emphasis in original).

2. In pertinent part, the statute reads as follows:
    B. Except as provided in subsection A [dealing with garagekeepers coverage] . . . if two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.
A.R.S. § 28–1170.01(B).

3. Absent the statute, if both policies purport to be excess, then ordinarily
    where two policies cover the same occurrence and both contain "other insurance" clauses, the excess insurance provisions are mutually repugnant and must be disregarded. Each insurer is then liable for a prorata share of the settlement or judgment.
*Bogart,* 149 Ariz. at 148, 717 P.2d at 452 (quoting *Harbor Ins. Co. v. United Services Auto. Ass'n,* 114 Ariz. 58, 63, 559 P.2d 178, 183 (Ct.App. 1976)).

tion of the statute. *See, e.g., Nationwide Mut. Ins. v. CNA Ins. Co.,* 159 Ariz. 368, 767 P.2d 716 (Ct.App.1988) (driver's insurer, after paying its insured for damages he incurred in accident in auto borrowed from garagekeeper, brought subrogation action against garagekeeper's insurer). The priorities might be of consequence, for example, when a loss did not exceed the aggregate of all policies. For instance, if Brown's loss had been only $150,000, with $50,000 liability coverage, the question of which of the $100,000 limit UIM policies would first apply would be of major importance between the insurers because payment by the primary UIM carrier would be sufficient to discharge the claim. Thus, only the primary UIM insurer would be liable and the excess UIM insurer would escape all liability.

Ordinarily, however, the matter is of little consequence to the insured and of no consequence in the case before us, where the damages exceed the aggregate limits of all policies. Brown's attack—raised in the supplemental petition for review—focuses not on which of the carriers is excess and which primary; in effect, she asks us to hold that even if State Farm is an excess UIM insurer, it may not escape or reduce its liability under the UIM clause until the total damages are paid. We turn now to examine those provisions of the State Farm other insurance excess clause that seek to reduce or eliminate the insurer's liability.

**B. The Other Insurance Clause**

We have had occasion to discuss the historical origins as well as the purpose and nature of other insurance clauses. *See Bogart,* 149 Ariz. 145, 717 P.2d 449. In short, other insurance clauses originated in property insurance to protect insurers from being required to pay double recoveries. *Id.* at 147, 717 P.2d at 451. Eventually, insurers began to include other insurance clauses in motor vehicle policies as well. *Id.*

Such clauses were designed to reduce or eliminate duplicate coverage different insurers would be obligated to provide when more than one policy applied to a claim. *Id.;* A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST COVERAGE, § 13 (2d ed. 1987).

1. *The State Farm Other Insurance Clause*

State Farm's policy contains two provisions that purport to limit its coverage when other insurance is available. The first would apply when the other insurance was primary and State Farm's excess. In that case State Farm would pay "only in the amount by which it exceeds the primary coverage." [4] The provision is known as an excess/escape clause. WIDISS § 13.3, at 387. The State Farm other insurance clause also contains the following proviso: "the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess." [5] The provision would apply when a claimant was an insured under two or more excess policies. It is referred to as a "proportional, maximum liability" other insurance clause, or as a "prorata" other insurance clause. WIDISS § 13.8, at 406.

Both the trial court and the court of appeals limited Brown's total recovery to the highest amount of coverage either insurer provided ($100,000), even though either insurance company alone would have been liable for the full amount ($100,000) if the other policy had not existed. Thus, under the trial court's approach using the prorata clause, both insurance companies would have been able to reduce their UIM coverage even though the victim had not been fully indemnified. Under the court of appeals' approach State Farm would escape liability completely even though its insured was only partly compensated. We believe

---

4. *See supra* n. 1. The provision is an adaptation of the 1966 STANDARD FORM, Part VI: Additional Conditions: E. Other Insurance.

5. This provision appears in the 1966 STANDARD FORM, Part IV: Additional Conditions: E. Other Insurance (second paragraph). It provides that the highest limit in any of the available policies determines the maximum amount for which all the insurance companies would be jointly liable.

either construction runs afoul of both Arizona legislative enactments and case law.

### 2. *The Statutory Mandate*

The legislature has required insurers to provide uninsured motorist (UM) coverage and offer UIM coverage.[6] We thus must determine the enforceability of the excess/escape and prorata limitation clauses with the statutory mandate in mind. *State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 251, 782 P.2d 727 (1989) (all statutes relating to insurance contracts in effect become part of the contract). The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind a statute. *Calvert v. Farmers Ins. Co. of Arizona,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). We have determined that in light of its objective, A.R.S. § 20–259.01 should be construed to require indemnification of victims of accidents with uninsured or underinsured motorists. *See Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 731 P.2d 84 (1987).

As we noted recently, the legislature intended that UIM coverage provide the insured with a source of recovery for injuries that could not be adequately compensated by the tortfeasor's liability insurance. *Wilson,* 162 Ariz. at 255, 782 P.2d at 731. We have determined that an other vehicle exclusion denying coverage to the victim of an uninsured motorist was invalid. *Calvert.* We have also rejected attempts by insurance companies to eliminate UM coverage by utilizing offset provisions. *Spain.* Moreover, in finding a named driver exclusion void as applied to UM coverage, we held recovery was not limited to the statutory floor A.R.S. § 20–259.01(A) provides, but extended to the amount of mandatory or mandatorily offered coverage the insured has actually elected to purchase. *Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 115, 765 P.2d 513, 517 (1988). Most recently, we held that an owned vehicle exclusion denying UIM coverage was void. *Higgins v. Fireman's Fund Ins. Co.,* 160 Ariz. 20, 770 P.2d 324 (1989).

■ We have thus consistently found it contrary to public policy for an insurer to reduce or escape liability by use of exclusions or by offsetting mandatory policy coverages against other coverages available to an insured. *See Duran v. Hartford Ins. Co.,* 160 Ariz. 223, 224, 772 P.2d 577, 578 (1989). The rationale of these holdings is aptly characterized in *Higgins:*

> [The] statute ... gives the insured the right to purchase underinsured motorist coverage and ... therefore, does not permit the insurer to void the coverage by ... exceptions not permitted in the statute.

160 Ariz. at 23, 770 P.2d at 327. Accordingly, we do not believe the legislature intended an accident victim to be deprived of the full benefit of mandatory coverage to which he is entitled as an insured because of competing other insurance clauses in applicable insurance policies. *See Wilson,* 162 Ariz. at 253, 782 P.2d at 729 (legislature intended insurers issuing UIM coverage to provide additional coverage after other coverages were exhausted); *see also* WIDISS § 41.7, at 96 (the legislative goal for UIM insurance is to use the private insurance system to provide sources of indemnification for accident victims generally, not simply the purchaser).

■ In the present case, according to the stipulation of the parties, the other insurance available from Farmers' liability coverage for McGlothlin's negligence and

---

**6.** Identical policy considerations apply to UIM coverage, once the insured has exercised his statutory right to purchase it, as apply to UM coverage. *See State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 251, 782 P.2d 727 (1989). Consequently, coverage questions about the effect of the other insurance clause in UIM coverage provisions generally are treated in the same manner as similar disputes that involve UM insurance. WIDISS § 40, at 73. State Farm's other insurance clauses are virtually identical for both UM and UIM coverage. *See* Joint Statement of Facts, filed October 15, 1987. Our analysis throughout this opinion will therefore also reference decisions dealing with UM as well as UIM coverage. State Farm acknowledged the validity of this reference when it stated, "Uninsured coverage and underinsured coverage will track identically in almost every situation." Appellant's Opening Brief in Court of Appeals at 12.

Universal's UIM policy (which provided additional coverage to compensate for damages caused by McGlothlin's negligence) is insufficient to compensate for Brown's actual damages. Implicit in the nature of the UIM transaction contemplated by the statutes is the concept that UIM insurance provided by the insured's own carrier will protect him or her over and above the other insurance that may apply in a particular accident. *Wilson*, 162 Ariz. at 253, 782 P.2d at 729. To hold, therefore, as did the court of appeals, that the UIM coverage Jennifer's stepfather purchased may be reduced or eliminated by application of the escape provision in the other insurance clause, defeats the very objectives the statute requiring mandatory offering of such coverage was intended to attain. Allowing escape provisions in an other insurance clause to eliminate excess coverage purchased above the primary policy defeats the very function of excess coverage. *See* WIDISS § 13.6, at 404. The same considerations apply to the trial court's use of State Farm's prorata provision to reduce each insurer's excess liability when the insured had not been fully indemnified.

■ Insurers justifiably include other insurance clauses to prevent the insured from *duplicating* recovery. We do not retreat from the established rule that an insurer may restrict recovery to the insured's actual damages by use of prorata, offset, or escape clauses. *See Bogart*, 149 Ariz. at 147, 717 P.2d at 451; *Geyer v. Reserve Ins. Co.*, 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (1968). The rule, however, has no application in cases such as this where the insured does not seek double recovery but only full payment for the actual damage suffered, and where the insurer has received premiums on a policy intended by statute to provide protection in excess of other insurance available.

## C. The Validity of UIM Other Insurance Escape Clauses in Other Jurisdictions

A substantial body of judicial precedents exists affirming the right of an insured to aggregate UIM coverages. WIDISS § 40.2, at 76; *see also* 8C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 5103, at 515–16 (1981); Annotation, *Combining Or "Stacking" Uninsured Motorist Coverages Provided In Policies Issued By Different Insurers To Different Insureds*, 28 A.L.R.4th 362 (1984). Most courts find provisions permitting an insurer to reduce coverage contrary to the objectives underlying the statutory requirement of mandatorily offered UIM coverage. WIDISS § 40.2, at 77; *see also* APPLEMAN § 5102.25, at 471 ("The majority of jurisdictions, like the authors, do not favor provisions by which several insurers can reduce their obligations based upon the promises of a different company and leave an insured unreimbursed as to at least a portion of the damage which was, supposedly, within the scope of the insuring agreement.").

The majority of courts reasons that insurers violate the public policy embodied in the UM/UIM statutes by inserting clauses that permit them to reduce or eliminate coverage when the victim/insured has not been fully compensated. *See* WIDISS § 13.6, at 397–402; APPLEMAN § 5102.25, at 472; *see also Arizona Property & Cas. Ins. Guar. Fund v. Herder*, 156 Ariz. 203, 205, 751 P.2d 519, 521 (1988). A majority of states that has considered the issue also will not enforce the prorata other insurance provision when an insured seeks full indemnification for injuries. WIDISS § 13.12, at 420.[7]

Professor Widiss's discussion of a situation identical to the present case is instructive:

7. Confusion often arises as to the rules pertaining to one insurer as opposed to those applying to two. In *McCarthy v. Preferred Risk Mut. Ins. Co.*, 454 F.2d 393 (9th Cir.1972), the federal court of appeals applied Arizona law in interpreting an other insurance clause. The court denied the insured the full extent of coverage available from two insurers. Professor Appleman cites the case as an example of some courts that "erroneously apply [the rules applicable to a single insurer] to situations where there are different insurers upon an accident." APPLEMAN § 5106, at 535. He states the result in *McCarthy* should not be sanctioned where the effect is to prevent a recovery of the full damages sustained, if within cumulative coverages. *Id.* Of course, the court will prohibit aggregation when an insured has purchased multiple coverages from *one* insurer against the same event and seeks to stack the limits provided by

[A]n insured may be injured while occupying a vehicle owned by another person which is covered by underinsured motorist insurance.... The Other Insurance provisions uniformly specify that where there is underinsurance motorist coverage applicable to the vehicle occupied by the claimant at the time an accident occurs, that coverage is primary. If the insured claimant is also covered ... by other insurance policies—which provide protection, subject to certain exclusions, at all times—these coverages are secondary and apply as excess coverage. In this situation, *there should not be any issue—at least as a consequence of the endorsement provisions—about the right of an insured claimant to recover from more than one insurer providing underinsured motorist insurance.*

WIDISS § 40.1, at 75 (emphasis added). Professor Widiss concludes that "a claimant should be entitled to seek indemnification when there is more than one applicable underinsured motorist coverage." *Id.* § 40.2, at 76.

We are aware, of course, that in *Transportation Ins. Co. v. Wade*, 106 Ariz. 269, 475 P.2d 253 (1970), we held that offset provisions in other insurance clauses in the UM coverage in two separate policies purchased could be invoked. *Wade*, however, was decided before UM coverage became mandatory, before the advent of UIM coverage, and before UIM offering became mandatory. It did not therefore consider the purchase of UIM excess coverage. Moreover, commentators dealing with UM coverage have criticized its result. *See* WIDISS § 13.6, at 397 n. 16 and § 13.6, at 403; APPLEMAN § 5102, at 462–63. Given the change in statutory law and case law since *Wade* was decided in 1970, we believe its reasoning is obsolete and disapprove its doctrine insofar as it applies to UIM clauses.

---

any single coverage. In fact, the legislature has expressly provided that an insurer may prohibit such a result. *See* A.R.S. § 20–259.01(F), which states in pertinent part:

If multiple policies or coverages purchased by one insured on different vehicles apply to an

## CONCLUSION

We hold State Farm's UIM excess/escape clause and prorata limit reduction clause violate the public policy embodied in A.R.S. § 20–259.01 (UIM statute) if applied so as to obviate or reduce the UIM coverage available to Brown for her actual damages. Thus, to the extent her actual damages are not fully compensated, Brown is entitled to recover the limits of her State Farm UIM coverage over and above the amounts of available liability coverage from Farmers and primary UIM coverage from Universal.

We grant Brown's request for attorney's fees, pursuant to A.R.S. § 12–341.01. Brown may establish the amount of the award by complying with Rule 21(c), Ariz. R.Civ.App.P., 17B A.R.S.

The judgment is reversed, the opinion of the court of appeals is vacated, and the case is remanded to the trial court for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.

---

accident or claim, the insurer may limit the coverage so that only one policy, selected by the insured, shall be applicable to any one accident.