885 P.2d 144

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff/Counter-defendant-Appellant,**

v.

**Janice LINDSEY, individually and as surviving spouse of Walter E. Lindsey, the Estate of Walter E. Lindsey, Kathleen Lindsey, Bea Lindsey and Ronald Lindsey, Defendants/Counter-claimants-Appellants.**

**No. 1 CA–CV 92–0057.**

Court of Appeals of Arizona,
Division One, Department C.

June 28, 1994.

Review Granted Dec. 20, 1994.

Bell & O'Connor, P.C. by David M. Bell, James R. Morrow, Phoenix, for plaintiff/counterdefendant-appellant.

Roush, McCracken & Guerrero by Charles D. Roush, Phoenix, for defendants/counterclaimants-appellees.

## OPINION

LANKFORD, Presiding Judge.

State Farm Mutual Automobile Insurance Company ("State Farm") appeals from summary judgment entered in favor of its insureds, the Lindseys. The Lindseys brought this action against State Farm to recover damages stemming from an automobile accident with an underinsured motorist. The trial court's judgment allowed the Lindseys to increase their recovery by "stacking" underinsured motorist coverages under their three State Farm automobile policies, i.e., by adding the covered amounts of each policy's underinsured motorist coverage.

The primary issue on appeal is whether a statutory limitation on stacking underinsured motorist coverages applies in this case. Ariz. Rev.Stat.Ann. ("A.R.S.") section 20–259.01(F)[1] allows an insurer to prohibit the stacking of underinsured motorist coverage "purchased by one insured." The trial court nevertheless found that the coverages of all three State Farm policies could be added together.

Because section 20–259.01(F) allows State Farm to limit the Lindseys to coverage under a single policy, and because State Farm's policies contain such a limitation, we reverse and remand for entry of summary judgment in favor of State Farm.

The facts necessary to resolve these issues are undisputed. On July 3, 1989, Walter and Janice Lindsey were involved in an automobile accident in Oklahoma that resulted in the death of Walter Lindsey and caused severe injuries to Janice Lindsey. The Lindseys were occupying their Chevrolet Celebrity at the time of the accident. The other driver was at fault, and his insurer paid its liability policy's limits. However, these payments did not fully compensate the Lindseys for their damages.

At the time of the accident, the Lindseys carried a State Farm automobile policy for each of their three vehicles. The named insureds on each vehicle were as follows:

| | |
|---|---|
| Chevrolet Celebrity ("Chevy Policy") | Walter & Janice |
| Nissan Sentra ("Nissan policy") | Janice |
| Ford Ranger ("Ford Policy") | Walter. |

Although the named insureds on the policies were different, the applications for each policy listed both Walter and Janice as drivers and insureds. All three of the policies were purchased with community funds and were jointly owned.

Each policy was separately purchased. The Lindseys did not receive a multiple policy discount. When Walter Lindsey inquired into whether a multiple car discount was available State Farm replied "No."

Each policy provided underinsured motorist coverage of $100,000 per person and $300,000 per accident. Each policy also contained what is commonly referred to as an "other vehicle" exclusion. Specifically, the exclusion for underinsured coverage in the Nissan and Ford policies stated:

When Coverages U and W [underinsured motorist] Do Not Apply

\* \* \* \* \* \*

2. THERE IS NO COVERAGE UNDER COVERAGE W FOR BODILY INJURY TO AN INSURED:

a. WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU, YOUR

---

1. A.R.S. section 20–259.01(F) governs uninsured and underinsured motorist coverage. It provides in part:

   If multiple policies or coverages *purchased by one insured* on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by the insured, shall be applicable to any one accident.
   (Emphasis added).

SPOUSE OR ANY RELATIVE IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

The exclusion for underinsured coverage in the Chevy policy stated:

When Coverages U and W [underinsured motorist] Do Not Apply

THERE IS NO COVERAGE:

\* \* \* \* \* \*

2. FOR BODILY INJURY TO AN INSURED:

a. WHILE OCCUPYING, OR

b. THROUGH BEING STRUCK BY

A MOTOR VEHICLE OWNED BY YOU, YOUR SPOUSE OR ANY RELATIVE IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

State Farm paid the Lindseys the maximum benefits available under any *one* policy—$100,000 for the damages arising out of the death of Walter and $100,000 for the injuries to Janice. The Lindseys claimed that they were entitled to stack their underinsured motorist coverages from all three policies. State Farm initiated this action to obtain a declaration that, by virtue of A.R.S. section 20–259.01(F) and State Farm's policy exclusions, the Lindseys' underinsured motorist coverage is limited to one policy.

The parties filed cross-motions for summary judgment. They stipulated that Walter and Janice each suffered damages in excess of all potentially applicable insurance coverage.

The trial court granted summary judgment in favor of the Lindseys, ruling that the Lindseys could stack the underinsured motorist coverage of all three policies. The court determined that the limitation on stacking policies "purchased by one insured" did not apply because each of the policies had a different named insured. The court also determined that even if the statute did apply, the policies could still be stacked because the Lindseys would not obtain recovery greater than their actual loss.

State Farm filed a "Motion for Amendment of Judgment" seeking to amend the summary judgment. It argued that even if the phrase "purchased by one insured" was interpreted as "purchased by one named insured," the limitation still applied and the Lindseys could stack only two policies because Janice and Walter each appeared as named insureds on two of the policies. The trial court denied this motion, holding that the coverage under all three policies could be stacked because the named insured on each policy was different—Janice on the Nissan policy, Walter on the Ford policy, and both of them on the Chevy policy.

State Farm appealed from both the summary judgment entered in favor of the Lindseys and the denial of its Motion for Amendment of Judgment.

■ We first consider whether the trial court properly interpreted the statute. The parties argue over the meaning of the statutory term "purchased by one insured." Because we are presented with an issue of statutory interpretation, we review the trial court's determination *de novo*. *Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311, 823 P.2d 1317, 1319 (App.1991).

"The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind the statute." *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). Section 20–259.01(F) evidences a basic legislative intent to allow insurers to limit the stacking of underinsured motorist coverages from policies on different vehicles. "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). The statute provides in part:

If multiple policies or coverages *purchased by one insured* on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by *the insured*, shall be applicable to any one accident.

A.R.S. § 20–259.01(F) (emphasis added).

■ The Lindseys argue that the word "insured" in subsection F should be interpreted to mean "named insured." They contend the Legislature indicated in Subsection B that the term "insured" referred to the

"named insured."[2] The Lindseys argue that the word "insured" in Subsection F should be given the same meaning as in Subsection B.[3] *See Knoell Bros. Constr. v. State Dep't of Revenue,* 132 Ariz. 169, 171, 644 P.2d 905, 907 (App.1982).

■ The language of Subsection F is clear: the Legislature used the terms "purchased by one insured" and "the insured." We hold that by its plain language, section 20–259.01(F) applies when the same person *purchases* multiple policies, regardless of who is the "named insured" on the declarations page. Because the language of the statute is clear, we need not interpret the term "insured." *See Janson,* 167 Ariz. at 471, 808 P.2d at 1223 (rules of interpretation are inapplicable when statutory language is clear and unequivocal); *cf. Knoell Bros. Constr.,* 132 Ariz. at 171, 644 P.2d at 907 (when the same word appears several times in a statute it should be given the same meaning throughout *unless* a different meaning is clearly intended).

■ Had the Legislature intended to allow insurers to limit stacking only when the same "named insured" purchased multiple policies

it easily could have said so. Its use of the term "named insured" in Subsections B and C of A.R.S. section 20–259.01 and in other statutes demonstrates that it was aware of the distinction between an "insured" and a "named insured."[4] *See, e.g.,* A.R.S. § 20–1631(B). Because the Legislature specifically used the term "named insured" in other parts of the statute but did not do so in the stacking provision, we will not read it into that provision. *See Arizona Bd. of Regents v. Public Safety Ret. Fund Mgr.,* 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989) (subparts of same statute were interpreted differently when court refused to read previously used term into subpart from which it was excluded).

The legislative intent is best served when the statute is applied to allow insurers to limit stacking when an insured purchased multiple policies. The substitution of the term "named insured" for the term "insured" throughout the statute would lead to results clearly not intended by the Legislature. For instance, in subsection (G), the Legislature provided a right of subrogation for insurers who make payments for damages caused by

2. A.R.S. section 20–259.01(B) states:
   Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the *named insured* thereunder and by written notice offer the *insured* and at the request of the *insured* shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. The selection of limits by a *named insured* or applicant on the form approved by the director shall be valid for all insureds under the policy. The offer need not be made in the event of the reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy. At the request of the *insured,* the *insured* may purchase and the insurer shall then include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy in any amount up to the liability limits for bodily injury or death contained within the policy but not less than the limits prescribed in subsection A of this section.
   (Emphasis added).
3. The Lindseys contend without exposition that the "last antecedent rule" supports their construction. *See Phoenix Control Sys., Inc. v. Insur-*

*ance Co. of N. Am.,* 165 Ariz. 31, 34, 796 P.2d 463, 466 (1990). That rule of statutory construction "requires that a qualifying phrase be applied to the word or phrase immediately preceding as long as there is no contrary intent indicated." *Id.* "The last antecedent rule is not inflexible and it will not be applied where the context or clear meaning of a word or phrase requires otherwise." *Id.* Moreover, the rule does not apply here. In this case, the question is whether the term "insured," when used in one subsection of a statute, means "named insured" because the Legislature used the term "named insured" in another subsection. The "last antecedent" rule does not speak to that question. Rather, the rule instructs that when a sentence contains several antecedents, a qualifying word or phrase likely modifies the last antecedent only. *See id.*

4. The terms "named insured" and "insured" have distinctly different meanings. A "named insured" is the person whose name appears on the declarations page of an insurance policy. An "insured" is any person covered by the insurance policy, including the named insured. For instance, both Walter and Janice Lindsey were "insureds" under the Nissan policy even though only Janice Lindsey was a "named insured" under that policy.

an uninsured motorist. That section provides:

> Insurers who make payments for damages to *insureds* under the uninsured requirements of this section may subrogate and sue for reimbursement of the total amount of said payments in the name of *the insured* against any uninsured motorist responsible for the damages to *the insured.*

A.R.S. § 20–259.01(G) (emphasis added). If the term "named insured" is substituted for "insured" in this subsection, this subrogation right would be meaningless when the injured person is any insured other than the person listed as the named insured. The Legislature undoubtedly did not intend to confer such a narrow right of subrogation. The subrogation rights arise when any insured is injured in an accident and receives payments under the coverage. We conclude that the Legislature used "insured" and "named insured" advisedly and in accord with the usual meaning of the terms.

Furthermore, the stacking provision states that *the insured* is entitled to select which of the multiple policies is applicable to an accident. Surely the Legislature intended that the injured insured—who has a personal interest in having the policy with the highest coverage selected—should select the applicable policy. The *named insured* may not even be involved in the accident and may not care which policy is selected, or worse yet, might be induced to select a policy with lower coverage limits.

In sum, the language of the statute reveals that the Legislature intended to limit stacking when an insured purchases multiple policies. The stacking provision applies whenever the same insured purchases multiple insurance policies, not only when the named insured listed on the policy is the same.[5]

■ We next consider whether the Lindseys were "one insured" under the three policies within the meaning of section 20–259.01(F). That provision allows insurers to limit stacking, but only of multiple coverages purchased by "one insured." Applying principles of community property, the Lindseys were "one insured" when they purchased the three State Farm policies.

In Arizona, property acquired by either spouse during the marriage is the community property of both unless it falls within one of the specific exceptions:

> All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, is the community property of the husband and wife.

A.R.S. § 25–211. The Lindseys concede that all three of their automobiles, and the three State Farm policies insuring them, were acquired with community property. Under community property principles, the insurance policies constitute property of the community. *Id.; see Neely v. Neely,* 115 Ariz. 47, 51–52, 563 P.2d 302, 306–07 (App.1977) (affirming trial court's finding that insurance policies purchased with community funds and its proceeds were community property). Because both Lindseys are joint purchasers and owners of all three policies they were "one insured" within the meaning of the statute. Accordingly, we find that the stacking provision applies to them.

The Lindseys argue that even if the statute applies to them, the statute does not automatically preclude the stacking of coverages. They contend that insurance policies must expressly prohibit stacking to invoke the statutory limitation.

■ We agree and hold that the statute is not self-executing. Additional policy language is needed to incorporate the limitation into a policy. The statute provides: "If multiple policies or coverages … apply … the insurer *may limit* the coverage so only one policy, selected by the insured, shall be applicable to any one accident." A.R.S. § 20–259.01(F) (emphasis added). The statute is not self-executing because the language of the statute is permissive, not mandatory.[6]

---

**5.** Our discussion of the phrase "purchased by one insured" and rejection of the "named insured" argument obviates any need to determine State Farm's argument that stacking was limited because each of the Lindseys appeared as "named insureds" on two policies.

**6.** State Farm argues that the statute's limitation on stacking automatically applies to the Lind-

Therefore, the insurer must include a provision prohibiting stacking in each policy. *See Giannini v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 468, 470–71, 837 P.2d 1203, 1205–06 (App.1992) (holding that A.R.S. section 20–259.01 allows insurers to limit coverage to one policy and that State Farm's "other insurance" clause limited the Gianninis' recovery pursuant to the statute).

Because the stacking statute is not self-executing, we consider whether the policies that the Lindseys purchased from State Farm effectively limited stacking of their underinsured motorist coverages. Specifically, we consider the "other vehicle" exclusions in these policies.

■ Each of the Lindseys' policies contain an "other vehicle" exclusion that validly prohibits stacking and limits coverage. While the policies do not refer directly to the statute, their broad language plainly encompasses limitations on stacking. The exclusions state that no coverage is provided for injuries sustained in a vehicle owned by the insured but not insured under the policy. This clause notifies the insured with multiple policies that one policy's underinsured motorists coverage will not apply to an accident involving an automobile insured under another policy. The effect of this exclusion—which prevents stacking—is consistent with the intent of the statute.

Other courts agree: "Other vehicle" clauses effectively prevent stacking. *E.g., Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo.App. 372, 599 P.2d 266, 268 (1979); *Williams–Diehl v. State Farm Fire & Cas. Co.*, 793 P.2d 587, 589–90 (Colo.App.1989); *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 600–01, 701 P.2d 217, 220–21 (1985); *Hind v. Quilles*, 745 P.2d 1239 (Utah 1987); *Schwochert v. American Family Mut. Ins. Co.*, 139 Wis.2d 335, 407 N.W.2d 525, 532 (1987).

■ We reject the Lindseys' argument that "other vehicle" clauses are unenforceable as void against public policy. This issue was resolved in *Giannini.*[7] 172 Ariz. at 470, 837 P.2d at 1205. We held in that case that under the statute, "other insurance" clauses may be used to limit uninsured motorist coverage to one policy. *Id.* Although "other insurance" and "other vehicle" clauses can be invalid if they undermine statutorily mandated coverage, State Farm's clauses are authorized by a specific statutory provision. *Id.* Thus, "other vehicle" exclusions are not void when they implement rather than undercut the underinsured motorist law. *Id.*

■ The Lindseys offer two specific arguments that State Farm's "other vehicle" clause violates public policy. First, the Lindseys point out that the exclusions do not fully

seys' policies because the entire Uninsured Motorists Act is automatically incorporated into the Lindseys' policies. *See* A.R.S. § 20–259.01(A); *Evenchik v. State Farm Ins. Co.*, 139 Ariz. 453, 458, 679 P.2d 99, 104 (App.1984) (the terms of the uninsured motorists statutes are "a part of every automobile liability policy"). The statutory language that is incorporated is merely permissive, however, which necessitates policy language invoking the limitation.

7. The Lindseys rely on *Croci v. Travelers Ins. Co.*, 163 Ariz. 346, 788 P.2d 79 (1990), *Rashid v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 270, 787 P.2d 1066 (1990), and *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 788 P.2d 56 (1989) as support for their assertion that "other vehicle" clauses are invalid and cannot be used to trigger the statutory limitation on stacking. These cases held that "other insurance" clauses could not be used to limit or eliminate the uninsured and underinsured motorist coverage mandated by A.R.S. section 20–259.01.

"Other vehicle" exclusions, such as the exclusions at issue in this case, have been treated

similarly under Arizona law. *See Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 22–23, 770 P.2d 324, 326–27 (1989) (insurer cannot eliminate underinsured coverage mandated by A.R.S. section 20–259.01 via another vehicle exclusion); *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985) (other vehicle exclusion seeking to preclude uninsured coverage mandated by Uninsured Motorist Act held invalid).

All of these cases are distinguishable, however. The other insurance clauses and other vehicle exclusions in the above-referenced cases attempted to reduce or eliminate the coverage mandated by statute. In contrast, the other vehicle exclusions at issue here limit coverage as specifically authorized by the pertinent statute—A.R.S. section 20–259.01(F). *See Giannini,* 172 Ariz. at 471, 837 P.2d at 1206; *cf. Rashid,* 163 Ariz. at 272–73 n. 2, 787 P.2d at 1068–69 (in dictum, the Arizona Supreme Court stated A.R.S. section 20–259.01(F) authorizes an insurer, who issues multiple policies to a single insured, to prohibit the insured from stacking the coverages).

inform an insured of his rights: the exclusion does not refer to section 20–259.01(F). In particular, the exclusions do not set forth the insured's statutory option to collect from any one of his or her policies. However, the policy need not refer to the statute to be clear and to effectively limit coverage. Nor do we believe that the insurer's failure to reiterate the insured's right to select one of the policies in any way diminishes the insured's right to do so.[8]

■ Second, the Lindseys assert that they paid a full premium for their additional policies and it is against public policy for them to receive less than multiple coverage. This assertion is undeveloped by any argument and unsupported by any authority. We therefore need not consider this question. *Cagle v. Carlson,* 146 Ariz. 292, 294 n. 1, 705 P.2d 1343, 1345 (App.1985).

■ Moreover, we do not believe that the premium structure is determinative, at least when—as here—a statute authorizes insurers to exclude stacking and the insurer employs policy language which unambiguously does so. Although the courts of other jurisdictions are divided on the question, *see* Janet Boeth Jones, Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured,* 23 A.L.R.4TH 12, 18–24 (1983), the better view is that the clear policy limitation, authorized by statute, controls. *E.g., Menke v. Country Mut. Ins. Co.,* 78 Ill.2d 420, 36 Ill.Dec. 698, 700–01, 401 N.E.2d 539, 541–42 (1980). Although the Arizona Legislature may have expected the anti-stacking statute to result in lower premiums, we have found no indication that it intended to require insurers to prove as a condition to invoking the statute that its premiums for unstacked underinsured motorist coverage were reduced when multiple policies were sold.

■ Because we find that State Farm's policies validly invoke the stacking limitation provision of Subsection F, we must next address the trial court's conclusion that Subsection F applies only when stacking would result in double recovery.[9]

*Giannini* rejected that result.[10] 172 Ariz. at 470–71, 837 P.2d at 1205–06 (victims may not stack coverages to acquire full indemnification "in situations not intended by the statute or expressly forbidden by it"). The Legislature gave insurers broad authority to offer insurance contracts that prohibit the stacking of uninsured and underinsured motorist coverages purchased by one insured. A.R.S. § 20–259.01(F). We will not engraft a double recovery analysis onto the statute. As a result, the trial court erred in applying the double recovery analysis to this case.

In summary, we interpret Subsection F to apply to this case and to limit the Lindseys' coverage to a single policy. Because there is no genuine issue of material fact regarding whether the Lindseys' are entitled to collect on more than on policy, on remand we direct the superior court to enter summary judgment on behalf of State Farm.

■ We last address State Farm's request for attorneys' fees pursuant to A.R.S. section 12–341.01. Under that statute, the court may award the prevailing party in a contract action its reasonable attorneys' fees incurred therein. A.R.S. § 12–341.01; *Wenk v. Horizon Moving & Storage Co.,* 131 Ariz. 131, 133, 639 P.2d 321, 323 (1982) (statute authorizing award of attorneys' fees in a contract action applies to appeals as well as trials). Such an award is not mandatory; it is within the discretion of the court. *Lacer v. Navajo County,* 141 Ariz. 392, 395, 687 P.2d 400, 403 (App.1984); *Wagenseller v. Scotts-*

---

8. In this case the insured's statutory right to select coverage is insignificant because each of the Lindseys' policies provided the same amount of coverage.

9. Double recovery occurs when an insured receives payment in excess of his actual damages. *Brown v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 323, 328, 788 P.2d 56, 61 (1989).

The double recovery analysis had been applied in several Arizona cases to invalidate "other insurance clauses" which seek to preclude the stacking of coverages even though the insured has not been fully indemnified. *See, e.g., id.*

10. We note that our decision in *Giannini* was not available to the superior court at the time it made its decision in this case.

*dale Memorial Hosp.*, 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985).

While State Farm is the prevailing party, we exercise our discretion to deny its request for attorneys' fees. We rely in part on the novelty of the legal question presented and the hardship that an award of fees is likely to cause the insureds, who were victims of a serious accident. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985) (denying prevailing insurer's request for fees was not an abuse of discretion considering "the nature of action and relative economic positions of the parties"); *Stuart v. Insurance Co. of N. Am.*, 152 Ariz. 78, 85, 730 P.2d 255, 262 (App.1986) (denying fees to insurer who had summary judgment in its favor affirmed on appeal where appellants' claim presented issue of first impression regarding statutory interpretation and their position was not unmeritorious).

Accordingly, we reverse.

GARBARINO and GLATI,[11] JJ., concur.