897 P.2d 631

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff/Counterdefendant–Appellant,

v.

## Janice LINDSEY, individually and as surviving spouse of Walter E. Lindsey, the Estate of Walter E. Lindsey, Kathleen Lindsey, Bea Lindsey and Ronald Lindsey, Defendants/Counterclaimants–Appellees.

No. CV–94–0347–PR.

Supreme Court of Arizona.

June 29, 1995.

Bell & O'Connor, P.C. by David M. Bell and James R. Morrow, Phoenix, for plaintiff/counterdefendant-appellant.

Roush, McCracken & Guerrero by Charles D. Roush, Phoenix, for defendants/counterclaimants-appellees.

## OPINION

ZLAKET, Justice.

State Farm Mutual Automobile Insurance Company issued separate liability policies on three vehicles owned by Janice and Walter Lindsey. One car, a 1987 Nissan Sentra, was titled only in Mrs. Lindsey's name. The policy on that automobile listed her as the "named insured." The second vehicle, a 1985 Ford Ranger, was titled only in Walter Lindsey's name, and he was the named insured on its policy. The title to a 1987 Chevrolet Celebrity was in both of their names. The corresponding policy specified both as named insureds.

Each policy provided underinsured motor vehicle (UIM) benefits of $100,000 per person and $300,000 per accident. The insurer charged a separate premium for each vehicle's UIM coverage and did not give the Lindseys a discount for multiple policies. Each contract contained an "other vehicle" clause stating, in part:

> There is no coverage under coverage W [underinsured motor vehicle] for bodily injury to an insured:
>
> a. While occupying a motor vehicle owned by you, your spouse or any relative if it is not insured for this coverage under this policy.[1]

On July 3, 1989, Walter Lindsey was driving the Chevrolet with Janice as a passenger. They were in a collision caused by another motorist who had liability insurance limits of $25,000 per person and $50,000 per accident. Walter was killed. Janice was seriously injured.[2] The adverse driver's insurance company paid its policy limits. State Farm thereafter paid the maximum UIM benefits available under any one of its policies—$100,000 for Walter Lindsey's death and $100,000 for Janice Lindsey's injuries. The parties have stipulated that the death of Mr. Lindsey has a value well in excess of all available insurance coverage. They have reached the same agreement with respect to Mrs. Lindsey's injuries. The question to be resolved is whether State Farm is obligated to pay the limits on each of its other two policies.

On cross-motions for summary judgment, the trial court ruled against the insurer. The court of appeals reversed. *State Farm*

---

1. This language was used in both the Nissan and Ford policies. The Chevrolet policy varied slightly, stating:

   There is no [underinsured motor vehicle] coverage:
   1. ...
   2. For bodily injury to an insured:
      a. While occupying, or
   b. Through being struck by
      A motor vehicle owned by you, your spouse or any relative if it is not insured for this coverage under this policy.

2. The Lindseys' daughter, Bea, was also a passenger in the car. Her injury claim has been resolved and is not part of this action.

*Mut. Auto. Ins. Co. v. Lindsey,* 180 Ariz. 456, 464, 885 P.2d 144, 152 (Ct.App.1994).

## DISCUSSION

■ A.R.S. § 20–259.01(F) allows insurers to prohibit stacking, the practice by which insureds may seek indemnification from the same coverage under two or more policies. *See* Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 40.1, at 237 (2d ed. 1995). The statute states:

> If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by the insured, shall be applicable to any one accident.

As the court of appeals correctly found, this provision is not self-executing because its wording is merely permissive. *Lindsey,* 180 Ariz. at 461, 885 P.2d at 149. Thus, to be effective, "[a]dditional policy language is needed to incorporate the limitation into a policy." *Id.* The key issue here is whether State Farm embodied such language in its contracts. The carrier argues that it effectively incorporated this statutory restriction by reason of the "other vehicle" clause in each policy. We disagree.

■ Insurers have long relied on "other vehicle" exclusions to deny coverage to insureds who suffer injury in vehicles they own but have elected not to insure. *See* Widiss § 35.9, *supra; see also* 8C John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 5078.15 (1981) (examining comparable use of other vehicle exclusions in the context of *uninsured* motorist coverage). In fact, State Farm policies have contained "other vehicle" provisions for many years, certainly well before the 1982 enactment of A.R.S. § 20–259.01(F). *See, e.g., Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229, 231–32 (Fla.1971); *Boettner v. State Farm Mut. Ins. Co.,* 388 Mich. 482, 201 N.W.2d 795, 797 (1972). Thus, it cannot be asserted that these clauses were specifically included to take advantage of the limitation permitted by the statute. Nevertheless, the fact that they preexisted the legislative measure is not determinative here. Rather, it is the specific language used, as well as that which is missing, that compels us to find against State Farm on this issue.

Where allowed, "anti-stacking clauses are valid if they are unambiguous and follow the provisions of [the statute]." *Safeco Corp. v. Kuhlman,* 47 Wash.App. 662, 737 P.2d 274, 276 (1987) (quoting *Vadheim v. Continental Ins. Co.,* 107 Wash.2d 836, 734 P.2d 17, 22 (1987)). In A.R.S. § 20–259.01(F), the legislature "specifically outlined circumstances under which an insured is precluded from aggregating multiple coverages." *Rashid v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 270, 274, 787 P.2d 1066, 1070 (1990). As previously indicated, "one insured" must have bought "multiple policies or coverages ... on different vehicles." A.R.S. § 20–259.01(F). Moreover, the insured must be given the right to choose which policy is to be applied to an accident. *Id.*

Here, multiple policies were purchased from State Farm. Those contracts, drawn entirely by the carrier, fail in their wording to come close to the provisions of the statute. For example, nowhere do they advise insureds of their right to make a selection of policies in the event of a claim. The court of appeals found that this failure was "insignificant" because the three policies here had identical limits. *See Lindsey,* 180 Ariz. at 463 n. 8, 885 P.2d at 151 n. 8. We are most uncomfortable with this conclusion. It is precisely because the contractual omission may be vitally important when coverages are *not* identical that the issue has clear implications beyond the facts of this case and concerns a matter of significant public interest. Sound interpretation and application of the statute ought not depend upon a fortuitous circumstance such as the size of the respective policy limits. We also cannot agree that such an oversight in the contract can be remedied by the carrier notifying insureds of their selection rights after an accident, which State Farm claims it did in this case.

Furthermore, we note that the policy actually contradicts the choice provisions of the statute. The other vehicle clauses state that the carrier provides no UIM coverage for injuries sustained while the insured is occupying an owned vehicle that "is not insured

for *this* coverage under *this* policy." (Emphasis added). Thus, the language quite literally eliminates the insured's right to select any other policy.

We do not suggest that State Farm, or any other carrier, does not have the right to preclude coverage stacking. A.R.S. § 20–259.01(F) clearly allows an insurer to do so. We merely find that this insurer did not take the steps necessary to effectuate the limitation. It might have done so by issuing one policy on all three vehicles. *See Duran v. Hartford Ins. Co.,* 160 Ariz. 223, 224, 772 P.2d 577, 578 (1989). It undoubtedly would have done so by expressing the prohibition against stacking in clear and unambiguous terms according to the requirements of the statute.

The court of appeals applied community property principles in finding that Mr. and Mrs. Lindsey satisfied the "one insured" requirement in subsection F of the statute. *Lindsey,* 180 Ariz. at 461, 885 P.2d at 149. Based on our resolution of the case, we need not reach this issue.

Because the other vehicle clauses do not clearly invoke or even approximate the terms of A.R.S. § 20–259.01(F), they do not effectively prohibit stacking. Summary judgment should be entered in favor of the Lindseys. The judgment of the trial court is affirmed and the court of appeals's opinion is vacated.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.